UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>    v.<br>GONZALO VASQUEZ-GONZALEZ,<br>    Defendant. | Case No. 5:14-cr-00291 EJD<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 17 |

Defendant Gonzalo Vasquez-Gonzalez ("Vasquez-Gonzalez") moves to dismiss a one-count Information charging him with illegal reentry after deportation in violation of 8 U.S.C. § 1326. See Docket Item No. 17. Plaintiff United States of America opposes the motion. Having carefully considered the pleadings and the arguments of counsel presented at the hearing on December 8, 2014, Vazquez-Gonzalez's motion will be denied for the reasons explained below.

I. **BACKGROUND**

Vasquez-Gonzalez was born in Mexico in 1975 and entered the United States with his mother, Narda, and younger brother, Arnoldo, in 1980. See Decl. of Narda Gonzalez ("N. Gonzalez Decl."), Docket Item No. 17, at ¶ 1. He was five years old at the time. Id. At the age of 12, Vasquez-Gonzalez applied for temporary legal residence and, in 1989, he became a legal permanent resident.

Vasquez-Gonzalez's family settled in Santa Cruz County, California. He participated in

activities and attended the schools in that area. Id.; see also Decl. of Arnoldo Vasquez ("A. Vasquez Decl."), Docket Item No. 17, at ¶ 1. He graduated from high school in 1993, and then began working. See A. Vasquez Decl., at ¶¶ 1, 3. He also assisted Narda in caring for his younger siblings while she was at work. Id. at ¶¶ 2-3.

On May 20, 1994, when Vasquez-Gonzalez was approximately 19 years old, he was convicted in Santa Cruz County Superior Court of misdemeanor battery in violation of California Penal Code § 242, and felony grand theft from a person in violation of California Penal Code § 487. See Compl., Docket Item No. 1, at ¶ 5; see also Defs. Mot., at 4:9-12. He was sentenced to 30 days in jail for these convictions. See Compl., at ¶ 5. Less than one year later, on March 3, 1995, Vasquez-Gonzalez was convicted in the same state court of felony assault with a deadly weapon in violation of California Penal Code 245(a)(1). Id. at ¶ 6. He was sentenced to four years in prison for that conviction. Id.

Removal proceedings were commenced against Vasquez-Gonzalez while he was in prison and he was deported to Mexico on or about September 7, 1999. Id. at ¶ 3. He immediately re-entered the United States. Id. at ¶ 4. He was ultimately found by immigration authorities in Santa Cruz County on or about May 8, 2014. Id. at ¶ 8.

The Information underlying this case was subsequently filed on May 27, 2014. See Docket Item No. 7. This motion followed.

## II.   LEGAL STANDARD

As a predicate to a conviction under 8 U.S.C. § 1326, "the Government must establish that the defendant 'left the United States under order of exclusion, deportation, or removal, and then illegally reentered.'" United States v. Raya-Vaca, 771 F.3d 1195, 1201 (9th Cir. 2014) (quoting United States v. Barajas-Alvarado, 655 F.3d 1077, 1079 (9th Cir. 2011)).

Consequently, a defendant charged with a violation of § 1326 may, as a matter of due process, collaterally attack a predicate deportation order prior to trial. United States v. Pallares-Galan, 359 F.3d 1088, 1095 (9th Cir. 2004). In doing so, the defendant must show that: (1) he exhausted the administrative remedies available for seeking relief from the predicate order; (2) the

2
Case No.: 5:14-cr-00291 EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

deportation proceedings "improperly deprived" him of an opportunity for judicial review; and (3) the order was "fundamentally unfair." 8 U.S.C. § 1326(d). A deportation order is "fundamentally unfair" if it resulted from proceedings that violated the defendant's due process rights and caused prejudice. Raya-Vaca, 771 F.3d at 1201-1202. "[W]here a deportation proceeding violates an alien's due process rights, the Government may not rely on any resulting deportation order as proof of an element of a criminal offense." United States v. Leon-Leon, 35 F.3d 1428, 1431 (9th Cir. 1994).

## III. DISCUSSION

Vasquez-Gonzalez argues the 1999 deportation order resulted from a proceeding that violated his due process rights. Specifically, he argues that the Immigration Judge's ("IJ") failure to advise him of potential deportation relief under § 212(c) of the Immigration and Nationality Act was fundamentally unfair and prevented him from exhausting administrative remedies and pursuing judicial review.

The Government does not contest the due process violation and therefore concedes that Vasquez-Gonzalez was eligible for § 212(c) relief. As a result, the first component of the fundamental unfairness element is satisfied, as are the administrative exhaustion and judicial review elements necessary for a collateral attack on the 1999 deportation order. United States v. Vidal-Mendoza, 705 F.3d 1012, 1015 (9th Cir. 2013) (holding that an alien need not separately demonstrate administrative exhaustion and denial of judicial review if the IJ failed to provide information about apparent eligibility for relief). This motion's success therefore turns on whether Vasquez-Gonzalez can satisfy the second component of fundamental unfairness by showing that the due process violation was prejudicial.

As the Ninth Circuit has recently confirmed, an alien can demonstrate prejudice from the absence of a § 212(c) advisement by presenting "plausible grounds for relief" from deportation. See Raya-Vaca, 771 F.3d at 1206 (citing United States v. Jimenez-Marmolejo, 104 F.3d 1083, 1086 (9th Cir. 1996)). Analyzing the issue is a two-step process. Id. At the first step, the court identifies the factors relevant to an exercise of discretion under § 212(c). Id. At the second step,

the court determines whether the movant's unique circumstances make out a plausible claim for relief under the relevant factors. Id.

Entitlement to § 212(c) relief is determined by "a balancing of the social and humane considerations," and a number personal factors are potentially relevant, some of which weigh in the positive and some of which weigh in the negative. Matter of Edwards, 20 I. & N. Dec. 191, 195 (BIA 1990). "Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred at a young age), evidence of hardship to the [alien] and his family if deportation occurs, service in this country's armed forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to . . . good character." Id. Adverse factors include "the nature and underlying circumstances of the exclusion or deportation ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of . . . bad character or undesirability as a permanent resident of this country." Id.

Vasquez-Gonzalez has identified some positive equities that weigh in his favor. His connection to this country as opposed to Mexico is considerable since he entered the United States at a young age, became a legal resident not long after, and completed high school in Santa Cruz County. Some work history is suggested in his pleadings, although the underlying details are not provided. In addition, he has strong familial ties here, particularly to his younger siblings who see Vasquez-Gonzalez as a father figure.

But Vasquez-Gonzalez also presents with substantial negative equities. The most significant is his criminal record, which at the time of the 1999 deportation included three convictions in the preceding five years. While one was for a misdemeanor, two of the convictions were for felonies, and one of those two - the § 245 conviction - is particularly troubling based on circumstantial observations that reveal the severity of this crime. Penal Code § 245 is a

4

"wobbler," or "a crime punishable as either a misdemeanor (by incarceration in county jail) or a felony (by incarceration in state prison)." People v. Corpuz, 38 Cal. 4th 994, 997 (2006). A § 245 felony conviction also carries a prison sentence of two, three, or four years. Cal. Pen. Code § 245(a)(1). As § 245 was applied to Vasquez-Gonzalez, it is notable he received - at the age of 19 - both the aggravated charge and the aggravated sentence, despite two opportunities to mitigate the effect of the conviction. Thus, although evidence of the conduct underlying the crime was not presented here, [1] it is nonetheless apparent that § 245 conviction weighs heavily against relief under §212(c).

Vasquez-Gonzalez's record of prison discipline is similarly problematic. The documents submitted by the Government show that from approximately December, 1995, through April 20, 1998, Vasquez-Gonzalez was involved in nine inmate altercations at two facilities. See Decl. of Courtney Norris ("Norris Decl."), Docket Item No. 25, at Exs. 1-9. Six were classified as "mutual combat." The other three were more serious in nature and range from a gang-related battery with serious injury to the possession of a weapon. While these administrative records cannot carry the same weight as criminal convictions, they are nonetheless relevant to the § 212(c) calculus as "other evidence" of bad character or undesirability as a permanent resident. See Edwards, 20 I. & N. Dec. at 195.[2] These records are also relevant to show that, as of 1999, any proof of genuine

---

[1] In its opposing memorandum, the Government describes the purported criminal conduct that resulted in the § 245 conviction. See Docket Item No. 24, at 2:6-8 ("[O]n February 2, 1995, the defendant was convicted of assault with a deadly weapon after he stabbed a man on the street whom the defendant and others had just robbed."). The Government did not, however, provide any evidence to support this description. This specific information cannot be found in Vasquez-Gonzalez's motion, despite the Government's citation to that document.

[2] Vasquez-Gonzalez argues the prison records should be entirely excluded from this analysis for several reasons. The court rejects each of them. The fact that the records were not before the IJ in 1999 - at a hearing where relief under § 212(c) was not raised - does not preclude their consideration at this stage since such relief is now at issue. Similarly, any authentication problems would have been easily resolved had the records been introduced at the deportation hearing since the Government was able to obtain these documents directly from the California Department of Corrections, years after Vasquez-Gonzalez was released from prison. See Norris Decl., at ¶ 3. One of Vasquez-Gonzalez's own exhibits establishes how authentication would have been possible. See Docket Item No. 28, at Ex. H (finding San Quentin State Prison record accompanied by declaration of records officers was properly authenticated). In addition, while the records produced are partially illegible, the salient portions can be deciphered.

5
Case No.: 5:14-cr-00291 EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

rehabilitation offered by Vasquez-Gonzalez would have been countered by evidence demonstrating otherwise.[3]  On both grounds, the records weigh against § 212(c) relief.

Having identified Vasquez-Gonzalez's unique circumstances, the court must now determine whether relief under § 212(c) was plausible.  As he presented in 1999 - with three recent criminal convictions, one of which involved serious injury to another person, and an extensive record of prison misconduct - Vasquez-Gonzalez would have been required to show "unusual or outstanding equities in order to receive relief."  United States v. Gonzalez-Valerio, 342 F.3d 1051, 1057 (9th Cir. 2003); Matter of Gutierrez-Murillo, No. A13 717 602, 6 Immig. Rptr. (MB) B1-72 (BIA 1988) ("[W]hen evidence of serious negative factors are present, such as serious drug offenses, or where human life has been endangered . . . a showing of unusual or outstanding counter-veiling equities will be necessary in order to support a grant of relief under section 212(c) of the Act."); Matter of Buscemi, No. 3058, 19 I. & N. Dec. 628, 633-34 (BIA 1988) (holding that a showing of unusual or outstanding equities "may be mandated because of a single serious crime . . . or because of a succession of criminal acts, which together establish a pattern of serious

---

Furthermore, any misconduct by authorities at Corcoran State Prison that may have occurred while Vasquez-Gonzalez was incarcerated there does not negate the effect of his prison record.  Indeed, Vasquez-Gonzalez continued to engage in problematic behavior even after he was transferred to another prison, where similar misconduct is not alleged to have occurred.

Moreover, the systematic differences between the prison disciplinary system and courts of law can be accounted for by attributing less weight to the administrative records than to criminal convictions, as the court has done here.  That type of measured consideration, as opposed to complete exclusion, is appropriate here because an alien's prison record, whether positive or negative, falls within the scope of a § 212(c) analysis.  See, e.g., Rashtabadi v. INS, 23 F.3d 1562, 1571 (9th Cir. 1994). Defendant's immigration expert agrees.  See Decl. of Sara E. Coppin ("Coppin Decl."), Docket Item No. 29, at ¶ 8 ("[A]lthough the records would likely carry some weight as evidence of poor conduct, they cannot be given equivalent weight to evidence of an actual conviction.  As to a lack of evidence of rehabilitation, again, they may be given some weight . . . .").

[3]   In any event, little if any evidence of rehabilitation could have been before the IJ in 1999 since deportation proceedings were initiated against Vasquez-Gonzalez while he was still in prison.  His record subsequent to 1999 is irrelevant, even if it shows an absence of criminal activity.  See United States v. Lopez-Hernandez, No. CR 06-00645 WHA, 2007 U.S. Dist. LEXIS 16251, at *38, 2007 WL 608111 (N.D. Cal. Feb. 23, 2007) (holding that the court should not consider events following the predicate deportation when weighing the § 212(c) factors).

criminal misconduct."). In applying this standard, though, the court is mindful that, while "[s]howing 'outstanding equities' can be an extremely difficult hurdle," it should not be imposed "in a rigid manner inevitably compelling the denial of relief." United States v. Garcia, No. 08-CR-1448-L, 2009 U.S. Dist. LEXIS 4006, at *10, 2009 WL 160242 (S.D. Cal. Jan. 21, 2009).

Here, Vasquez-Gonzalez's positive equities are not unusual or outstanding. Aside from a long period of residency, an unspecified work history and the completion of high school - none of which constitute uniquely compelling characteristics in this context - his strongest favorable factor is the connection to this family. But while his family's love for him is evident and has developed further since his release from prison, it cannot be ignored that Vasquez-Gonzalez was incarcerated for an extended period of time prior to entry of the 1999 deportation order. Thus, under the circumstances as they would have presented to the IJ, the loss of Vasquez-Gonzalez's companionship and support would not have been something "unusual or outstanding" for his mother and siblings. Indeed, his family had already adjusted to minimum amounts of contact with Vasquez-Gonzalez, and they could not have relied on his financial support at that time. Without something more, this type of generalized loss is simply one of the "common results of deportation" and does not "represent the type of additional evidence of extreme hardship beyond the normal deprivation of family support." United States v. Muro-Inclan, 249 F.3d 1180, 1185 (9th Cir. 2001) (internal quotations and citations omitted).[4] The authorities cited by Vasquez-Gonzalez on this topic, such as Matter of Vongvixay, No. A23 882 967, 28 Immig. Rptr. B1-37 (BIA 2003), and United States v. Garcia, 2009 U.S. Dist. LEXIS 4006 (S.D. Cal. Jan. 21, 2009), are each factually distinguishable and do not compel a contrary conclusion.[5]

---

[4]   Vasquez-Gonzalez submitted a declaration from immigration attorney Sara E. Coppin in which she states that Vasquez-Gonzalez would have been able to demonstrate "extreme hardship to his entire family, as he would have evidence of the hardship his family suffered throughout his incarceration, including depression and financial distress by his mother, and problems in school by his siblings." See Coppin Decl., at ¶ 9. However, Ms. Coppin does not provide a citation to the record for this statement, and the type of "extreme hardship" described by her is not entirely supported by the declarations submitted by Vasquez-Gonzalez's family members.

[5]   In Vongvixay, the Board of Immigration Appeals found the respondent presented unusual or outstanding equities to overcome convictions for sexual assault, possession of a stolen vehicle,

7
Case No.: 5:14-cr-00291 EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Ultimately, Vasquez-Gonzalez's negative equities far outweigh his positive ones, rendering the chance of 212(c) relief theoretical rather than plausible. He therefore has not met his burden to show that the 1999 deportation order is fundamentally unfair. Raya-Vaca, 771 F.3d at 1207 (holding that the burden to show plausibility is not satisfied "by merely showing a 'theoretical' possibility of relief"). Accordingly, the motion to dismiss must be denied.

## IV.   ORDER

The Motion to Dismiss the Information (Docket Item No. 17) is DENIED.

**IT IS SO ORDERED.**

Dated: January 7, 2015



EDWARD J. DAVILA
United States District Judge

---

and shoplifting because: (1) he was given a suspended sentence, had successfully complied with probation terms, was placed on minimum supervision, maintained steady employment, and had no further contact with a victim; and (2) he had arrived in the United States with his parents and brother as a refugee from Laos at the age of 7 and contributed to the household finances. Vasquez-Gonzalez's circumstances are indisputably distinct from those of the Vongvixay respondent.

In Garcia, the district court found the defendant established plausible grounds for relief under § 212(c), despite having to show unusual or outstanding equities, due to a long period of residence in the United States along with a strong employment history and familial ties to this country. Unlike Vasquez-Gonzalez, however, the Garcia defendant's crimes were much less severe: one misdemeanor conviction for being under the influence which resulted in no jail time, and two felony drug possession convictions, for which he was sentenced to 90 days and 16 months respectively. As a result, the Garcia defendant could overcome his negative equities with positive factors of lesser significance.